# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JARRETT CASTELONIA, | : | |
|     Plaintiff | : | No. 1:19-cv-27 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| C.O. HOLLENBUSH, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

On October 24, 2018, pro se Plaintiff Jarrett Castelonia ("Plaintiff"), who is currently incarcerated at the Northumberland County Prison in Coal Township, Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants C.O. Hollenbush ("Hollenbush"), Mr. Shuman ("Shuman"), Officer Ashton ("Ashton"), Patty Kulenguskey ("Kulenguskey"), Brian Davis ("Davis"), Warden Kovach ("Kovach"), and Lt. Greek ("Greek") in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 2.) In an Order dated October 25, 2018, the United States District Court for the Eastern District of Pennsylvania transferred the above-captioned action to this Court. (Doc. No. 5.) Presently before the Court is Defendant Kulenguskey's motion to dismiss Plaintiff's complaint (Doc. No. 38) and brief in support thereof (Doc. No. 40). Plaintiff has neither filed an opposition brief nor moved for an extension of time to do so. Accordingly, because the time period for filing an opposition brief has expired, the motion to dismiss is ripe for disposition.

## I. BACKGROUND

Plaintiff alleges that on June 15, 2017, he was arrested by Defendant Hollenbush "after a pursuit that ended in a car crash." (Doc. No. 2 ¶ 11.) After the pursuit, Plaintiff "was tased while in a creek of water." (Id.) He maintains that at no time did he received medical attention even after he expressed experiencing "extreme pain in [his] rib area." (Id.)

On June 16, 2017, Plaintiff was transported from the Columbia County Prison to the Northumberland County Jail. (Id. ¶ 14.) Upon his arrival, Plaintiff informed staff members about the pain in his rib cage but received no help. (Id. ¶ 15.) Plaintiff received a routine evaluation and a mental health screening and was placed on a 72-hour quarantine for "new commits." (Id. ¶¶ 15-16.)

On June 17, 2017, Plaintiff "awoke to find that his right thigh was swollen to the point that it was hard for [him] to walk." (Id. ¶ 17.) He notified several staff members and was told to submit a sick call slip, which he did. (Id.) Plaintiff eventually spoke to Defendants Davis and Kulenguskey "on several occasions" regarding his "leg being swollen and growing larger by the day, thus making it nearly impossible for [him] to walk." (Id. ¶ 18.) Plaintiff maintains that from his very first encounter with Defendants Davis and Kulenguskey, he "was prescribed numerous medications for inflam[m]ation and the steroid [prednisone], and told to drink water and that there wasn't anything wrong." (Id. ¶ 20.) He received "several medications . . . without any concrete diagnosis." (Id. ¶ 21.) According to Plaintiff, Defendants Davis and Kulenguskey also "began suggesting to other medical staff and county corrections staff that Plaintiff was indeed faking." (Id. ¶ 22.) Plaintiff maintains that he notified Defendants Green, Shuman, and Kovach of his "extreme pain" but that they did not "render assistance." (Id. ¶¶ 22-23.)

On June 24, 2017, Plaintiff "could not take the pain any longer." (Id. ¶ 26.) He spoke to Defendant Greek, who told Plaintiff that "the issue was out of his hands." (Id.) Plaintiff asked for a grievance. (Id.) An hour later, "Nurse Karen" came to see Plaintiff, examined his leg, and referred him to see the doctor the following morning. (Id. ¶ 27.) Plaintiff was seen by Dr. Morlock on June 25, 2017. (Id. ¶ 28.) Dr. Morlock examined Plaintiff's leg and "immediately suggested to other medical staff to call 911." (Id.) Plaintiff was subsequently transported to

Geisinger Medical, where he learned that he did not have any blood flow in his right leg. (Id. ¶¶ 28-29.) Plaintiff spent a month and a half in the hospital to undergo "repeated surgeries." (Id. ¶ 29.) Ultimately, Plaintiff learned that he suffered from deep vein thrombosis. (Id.) Based on these allegations, Plaintiff asserts violations of his due process rights under the Fourteenth Amendment as well as his rights under the Eighth Amendment. (Id. ¶¶ 41-42.) Plaintiff requests injunctive relief as well as compensatory and punitive damages. (Id. ¶¶ 43-45.)

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the

3

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### III. DISCUSSION

#### A. Plaintiff's Complaint

As noted above, Plaintiff alleges that Defendant Kulenguskey violated his due process rights under the Fourteenth Amendment, as well as his rights under the Eighth Amendment, by not providing adequate medical care for his leg pain. Plaintiff's complaint, however, does not clarify whether he was a pretrial detainee or a convicted prisoner during the relevant time period. Pretrial detainees' claims of inadequate medical care arise under the Fourteenth Amendment rather than the Eighth Amendment. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581

5

(3d Cir. 2003). The Supreme Court, however, has held that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment. See id. (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). In the context of claims for inadequate medical care, the Third Circuit has "found no reason to apply a different standard than that set forth in Estelle[v. Gamble, 429 U.S. 97 (1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pretrial detainee is sufficient under the Fourteenth Amendment." See id. Accordingly, the Court will analyze Plaintiff's claim under the framework of the Eighth Amendment.[1] See id. at 582.

To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale, 318 F.3d at 582. The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) plaintiff's objectively serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See

---

[1] To the extent that Plaintiff asserts a substantive due process claim based upon Defendant Kulenguskey's actions, he cannot do so. In adopting the "more-specific-provision-rule" established in County of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998), the Third Circuit has noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" See Betts v. New Castle Dev. Ctr., 621 F.3d 249, 260-61 (3d Cir. 2010). Here, Plaintiff's alleged due process violations fit squarely within his Eighth Amendment claims, foreclosing any substantive due process claims he may seek to raise.

Farmer, 511 U.S. at 837.  Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation.  See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").  If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second-guess the medical judgment of the attending physician.  See Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996).  Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference.  See Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  Moreover, a prison doctor's use of a different treatment regimen than that prescribed

7

by a private physician does not necessarily amount to deliberate indifference. See Johnson v. Cash, 557 F. App'x 102, 104 (3d Cir. 2013) (per curiam) (citing McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977)). The question is thus "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants." See Jacobs v. Lisiak, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

In the instant case, the Court agrees with Defendant Kulenguskey that Plaintiff's complaint, as pled, fails to state a plausible Eighth Amendment claim against her. Plaintiff's allegations against Defendant Kulenguskey amount to disagreement with the medical treatment provided by her. With respect to Defendant Kulenguskey, Plaintiff admits that he spoke to her "on several occasions" regarding his "leg being swollen and growing larger by the day." (Doc. No. 2 ¶ 18.) While he suggests that Defendant Kulenguskey "began suggesting to other medical staff and county corrections staff that Plaintiff was indeed faking," (id. ¶ 22), Plaintiff admits that from his first encounter with Defendant Kulenguskey, he "was prescribed numerous medications for inflame[m]ation and the steroid [prednisone], and told to drink water" (id. ¶ 21). Nothing in the complaint, however, suggests that these decisions were not an exercise of Defendant Kulenguskey's medical judgment. Plaintiff's disagreements with the medical treatment provided to him by Defendant Kulenguskey simply do not suffice to maintain an Eighth Amendment claim against her.[2] See Pearson, 850 F.3d at 535; see also Innis v. Wilson, 334 F. App'x 454,

---

[2] While not clear from Plaintiff's complaint, Plaintiff also seems to suggest that his Eighth Amendment rights were violated when medical staff delayed his receipt of treatment for deep vein thrombosis. (Doc. No. 2 ¶¶ 29, 39.) However, nothing in the complaint suggests that Defendant Kulenguskey was personally aware that Plaintiff suffered from deep vein thrombosis and delayed his receipt of treatment for such. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting that "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity").

456-57 (3d Cir. 2009). Accordingly, the Court will grant Defendant Kulenguskey's motion to dismiss.

### B. Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). Here, with respect to Plaintiff's Eighth Amendment claims against Defendant Kulenguskey, it is neither clear that amendment would be futile nor is there any basis to believe it would be inequitable. Accordingly, Plaintiff will be granted leave to file an amended complaint.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Kulenguskey's motion to dismiss. (Doc. No. 38.) Plaintiff will be granted leave to file an amended complaint as to his Eighth Amendment claims. An appropriate Order follows.