# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JARRETT CASTELONIA,** | : | |
| **Plaintiff** | : | No. 1:19-cv-27 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **C.O. HOLLENBUSH, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

On October 24, 2018, pro se Plaintiff Jarrett Castelonia ("Plaintiff"), who is currently incarcerated at the Northumberland County Prison in Coal Township, Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants C.O. Hollenbush ("Hollenbush"), Mr. Shuman ("Shuman"), Officer Ashton ("Ashton"), Patty Kulenguskey ("Kulenguskey"), Brian Davis ("Davis"), Warden Kovach ("Kovach"), and Lt. Greek ("Greek") in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 2.) In an Order dated October 25, 2018, the United States District Court for the Eastern District of Pennsylvania transferred the above-captioned action to this Court. (Doc. No. 5.) Defendants Ashton, Greek, Kovach, and Shuman filed an answer to Plaintiff's complaint on May 21, 2019. (Doc. No. 27.) Defendant Kulenguskey filed a motion to dismiss Plaintiff's complaint on July 31, 2019. (Doc. No. 38.) In a Memorandum and Order dated September 13, 2019, the Court granted Defendant Kulenguskey's motion to dismiss and granted Plaintiff thirty (30) days to file an amended complaint regarding his Eighth Amendment claims against Defendant Kulenguskey. (Doc. Nos. 42, 43.) Despite receiving an extension of time to do so (Doc. Nos. 57, 58), Plaintiff did not file an amended complaint in the time provided.

Presently before the Court is Defendant Hollenbush's motion to dismiss Plaintiff's complaint (Doc. No. 55) and brief in support thereof (Doc. No. 56). On November 15, 2019,

Plaintiff filed a brief opposing the motion to dismiss.[1] (Doc. No. 59.) To date, Defendant Hollenbush has filed neither a reply brief nor an extension of time to do so. Accordingly, because the time period for filing a reply brief has expired, the motion to dismiss is ripe for disposition.

## I. BACKGROUND

Plaintiff alleges that on June 15, 2017, he was arrested by Defendant Hollenbush "after a pursuit that ended in a car crash." (Doc. No. 2 ¶ 11.) After the pursuit, Plaintiff "was tased while in a creek of water." (Id.) He maintains that he did not receive medical attention even after he expressed experiencing "extreme pain in [his] rib area." (Id.) Plaintiff was subsequently taken to the Mt. Carmel Police Station. (Id. ¶ 12.) After an hour and a half, Defendant Hollenbush transported Plaintiff to the Snyder County Prison. (Id.) Forty-five (45) minutes later, Plaintiff was transported to the Columbia County Prison, where he "was booked in for the night with still no medical attention given." (Id. ¶ 13.)

On June 16, 2017, Plaintiff was transported from the Columbia County Prison to the Northumberland County Jail. (Id. ¶ 14.) Upon his arrival, Plaintiff alleges that he informed staff members about the pain in his rib cage but received no help. (Id. ¶ 15.) Plaintiff received a routine evaluation and a mental health screening and was placed on a 72-hour quarantine for "new commits." (Id. ¶¶ 15-16.)

On June 17, 2017, Plaintiff "awoke to find that his right thigh was swollen to the point that it was hard for [him] to walk." (Id. ¶ 17.) He notified several staff members and was told to

---

[1] In his opposition brief, Plaintiff reiterates his request that the Court appoint counsel to represent him in this matter. (Doc. No. 59 at 2-3.) To the extent that Plaintiff's request is properly before the Court, the Court will deny his request for counsel without prejudice for the reasons previously stated in the Court's February 11, 2019 and November 4, 2019 Orders. (Doc. Nos. 18, 52.)

submit a sick call slip, which he did. (Id.) Plaintiff eventually spoke to Defendants Davis and Kulenguskey "on several occasions" regarding his "leg being swollen and growing larger by the day, thus making it nearly impossible for [him] to walk." (Id. ¶ 18.) Plaintiff maintains that from his very first encounter with Defendants Davis and Kulenguskey, he "was prescribed numerous medications for inflam[m]ation and the steroid [prednisone], and told to drink water and that there wasn't anything wrong." (Id. ¶ 20.) He received "several medications . . . without any concrete diagnosis." (Id. ¶ 21.) According to Plaintiff, Defendants Davis and Kulenguskey also "began suggesting to other medical staff and county corrections staff that Plaintiff was indeed faking." (Id. ¶ 22.) Plaintiff alleges that he also notified Defendants Green, Shuman, and Kovach of his "extreme pain" but that they did not "render assistance." (Id. ¶¶ 22-23.)

On June 24, 2017, Plaintiff "could not take the pain any longer." (Id. ¶ 26.) He spoke to Defendant Greek, who told Plaintiff that "the issue was out of his hands." (Id.) Plaintiff asked for a grievance. (Id.) An hour later, "Nurse Karen" came to see Plaintiff, examined his leg, and referred him to see the doctor the following morning. (Id. ¶ 27.) Plaintiff was seen by Dr. Morlock on June 25, 2017. (Id. ¶ 28.) Dr. Morlock examined Plaintiff's leg and "immediately suggested to other medical staff to call 911." (Id.) Plaintiff was subsequently transported to Geisinger Medical, where he learned that he did not have any blood flow in his right leg. (Id. ¶¶ 28-29.) Plaintiff spent a month and a half in the hospital to undergo "repeated surgeries." (Id. ¶ 29.) Ultimately, Plaintiff learned that he suffered from deep vein thrombosis. (Id.) Based on these allegations, Plaintiff asserts violations of his due process rights under the Fourteenth Amendment as well as his rights under the Eighth Amendment. (Id. ¶¶ 41-42.) Plaintiff requests injunctive relief as well as compensatory and punitive damages. (Id. ¶¶ 43-45.)

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the

elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.     Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

### A. Plaintiff's Complaint

Defendant Hollenbush is referenced in two (2) paragraphs of Plaintiff's complaint. Those paragraphs state as follows:

> On 6-15-17 I was arrested by Chief Hollenbush after a pursuit that ended in a car crash. No ambulance was requested during or after the pursuit. I was tased while in a creek of water, and still no medical attention was given even after I expressed extreme pain in my rib area.
>
> The taser darts were simply pulled out of me by Shamokin City Police Officer Sako. At that time I was transported by Officer Sako to the Mt. Carmel Police Station and placed in a cell. Plaintiff remained there for one hour & ½ then Plaintiff was transported to the Snyder County Prison by Mt. Carmel's Police Chief Hollenbush.

(Doc. No. 2 ¶¶ 11-12.) The Court construes Plaintiff's complaint to allege that Defendant Hollenbush violated his Fourth Amendment rights to be free from the use of excessive force as well as his Fourteenth Amendment rights by not providing medical attention. The Court considers each in turn below.

### 1. Fourth Amendment Claim

The use of excessive force during an arrest "is properly analyzed under the Fourth Amendment." See Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999). To state a claim for excessive force under the Fourth Amendment, "a plaintiff must show that a seizure—his arrest—was carried out in an unreasonable manner." See Peters v. Brown, No. 18-2796, 2019 WL 5597718, at *4 (3d Cir. Oct. 30, 2019). "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). Reasonableness must be evaluated from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." See Graham, 490 U.S. at 396.

In the instant case, Plaintiff's complaint, as pled, fails to allege a plausible Fourth Amendment excessive force claim against Defendant Hollenbush. While Plaintiff mentions that he was "tased while in a creek of water" (Doc. No. 2 ¶ 11), he fails to set forth facts suggesting that Defendant Hollenbush is the individual who used the taser against him. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting that "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior"). Moreover, Plaintiff's complaint is devoid of facts regarding the circumstances leading to his arrest and the use of the taser. At this time, Plaintiff cannot maintain his Fourth Amendment claim against Defendant Hollenbush. Accordingly, the Court will grant Defendant Hollenbush's motion to dismiss with respect to Plaintiff's Fourth Amendment excessive force claim.

## 2. Fourteenth Amendment Claim

"The Due Process Clause [of the Fourteenth Amendment] . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); see also Jennings v. Fetterman, 197 F. App'x 162, 165 (3d Cir. 2006) (noting that denial or delay of medical care can violate the Fourteenth Amendment because "[a]s an arrestee in the custody of government officials, [Plaintiff] was required to be given medical care for his wounds"). Claims alleging the denial of medical care under the Due Process Clause of the Fourteenth Amendment are analyzed under the "deliberate indifference" standard, the same standard applied to such claims brought by convicted prisoners under the Eighth Amendment. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2003).

To state a claim for unconstitutional deprivation of medical care under the Fourteenth Amendment, "a plaintiff must allege (1) a serious medical need and (2) acts or omissions by the police officers that indicate deliberate indifference to that need." See Williams v. Rider, No. 1:12-cv-1566, 2014 WL 3881624, at *7 (M.D. Pa. Aug. 7, 2014). An officer demonstrates deliberate indifference when he acts with a conscious disregard to a substantial risk of serious harm. See Kaucher v. Cty. of Bucks, 455 F.3d 418, 427-28 (3d Cir. 2006). Deliberate indifference may occur where there is "objective evidence that [a] plaintiff had serious need for medical care" and a defendant ignored that evidence. See Nykiel v. Borough of Sharpsburg, 778 F. Supp. 2d 573, 584 (W.D. Pa. 2011) (citing Nicini v. Morra, 212 F.3d 798, 815 n.14 (3d Cir. 2000)). A medical need is serious if it is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Thus, Plaintiff must allege that Defendant Hollenbush knew of a

8

risk to his health and safety and disregarded it. See Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001).

In the instant case, the Court agrees with Defendant Hollenbush that Plaintiff's complaint, as pled, fails to state a plausible Fourteenth Amendment claim against him. Plaintiff alleges that he was not given medical attention "even after [he] expressed extreme pain in [his] rib area." (Doc. No. 2 ¶ 11.) Plaintiff, however, fails to set forth facts suggesting that he told Defendant Hollenbush that he was in pain and that Defendant Hollenbush ignored his complaints. See Rode, 845 F.2d at 1207. Without more, Plaintiff cannot maintain his Fourteenth Amendment claim against Defendant Hollenbush. Accordingly, the Court will grant Defendant Hollenbush's motion to dismiss with respect to Plaintiff's Fourteenth Amendment claim as well.

**B.     Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). Here, with respect to Plaintiff's claims against Defendant Hollenbush, it is neither

clear that amendment would be futile nor is there any basis to believe it would be inequitable. Accordingly, Plaintiff will be granted leave to file an amended complaint.[2]

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Hollenbush's motion to dismiss (Doc. No. 55) and grant Plaintiff leave to file an amended complaint. An appropriate Order follows.

---

[2] As noted above, in its September 13, 2019 Memorandum and Order, the Court granted Defendant Kulenguskey's motion to dismiss and granted Plaintiff leave to file an amended complaint with respect to his Eighth Amendment claims against her. (Doc. Nos. 42, 43.) Despite receiving an extension of time (Doc. Nos. 57, 58), Plaintiff did not file an amended complaint in the time permitted. Because the Court is granting Plaintiff leave to file an amended complaint with respect to his claims against Defendant Hollenbush, Plaintiff may use this opportunity to amend his claims against Defendant Kulenguskey as well.