## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JARRETT CASTELONIA,** | : | |
| **Plaintiff** | : | **No. 1:19-cv-00027** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **C.O. HOLLENBUSH, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

On October 24, 2018, <u>pro</u> <u>se</u> Plaintiff Jarrett Castelonia ("Plaintiff"), who is currently incarcerated at the Fauquier County Detention Center in Warrenton, Virginia, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants C.O. Hollenbush ("Hollenbush"), Mr. Shuman ("Shuman"), Officer Ashton ("Ashton"), Patty Kulenguskey ("Kulenguskey"), Brian Davis ("Davis"), Warden Kovach ("Kovach"), and Lt. Greek ("Greek") in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 2.)  In an Order dated October 25, 2018, the United States District Court for the Eastern District of Pennsylvania transferred the above-captioned action to this Court.  (Doc. No. 5.)  Defendants Ashton, Greek, Kovach, and Shuman filed an answer to Plaintiff's complaint on May 21, 2019.  (Doc. No. 27.)  Defendant Kulenguskey filed a motion to dismiss Plaintiff's complaint on July 31, 2019.  (Doc. No. 38.)  In a Memorandum and Order dated September 13, 2019, the Court granted Defendant Kulenguskey's motion to dismiss and granted Plaintiff thirty (30) days to file an amended complaint regarding his Eighth Amendment claims against Defendant Kulenguskey.  (Doc. Nos. 42, 43.)  Despite receiving an extension of time to do so (Doc. Nos. 57, 58), Plaintiff did not file an amended complaint in the time provided.

On November 8, 2019, Defendant Hollenbush filed a motion to dismiss.  (Doc. No. 55.) On November 14, 2019, Plaintiff filed a motion for an extension of time to file an amended

complaint (Doc. No. 57), which the Court granted in an Order dated that same day (Doc. No. 58).  On November 15, 2019, the Court received Plaintiff's brief in opposition to Defendant Hollenbush's motion to dismiss.  (Doc. No. 59.)  In a Memorandum and Order dated January 30, 2020, the Court granted Defendant Hollenbush's motion to dismiss.  (Doc. Nos. 62, 63.)  The Court granted Plaintiff thirty (30) days to file an amended complaint with respect to his claims against Defendant Hollenbush.  (Doc. No. 63.)  The Court also noted that despite receiving an extension of time to do so, Plaintiff had not filed an amended complaint in the time permitted.  (Doc. No. 62 at 10 n.2.)  The Court, therefore, advised Plaintiff that he could use this opportunity to amend his claims against Defendant Kulenguskey, as well.  (Id.)

Presently before the Court is Defendants Ashton, Greek, Kovach, and Shuman's motion for judgment on the pleadings (Doc. No. 64) and brief in support thereof (Doc. No. 65), filed on January 30, 2020.  To date, Plaintiff has filed neither a brief in opposition nor a motion seeking an extension of time to do so.  Plaintiff has also filed neither an amended complaint nor a motion seeking an extension of time to do so.  Accordingly, because the time period for filing a brief in opposition has expired, the motion for judgment on the pleadings is ripe for disposition.

I.     BACKGROUND

Plaintiff alleges that on June 15, 2017, he was arrested by Defendant Hollenbush "after a pursuit that ended in a car crash."  (Doc. No. 2 ¶ 11.)  After the pursuit, Plaintiff "was tased while in a creek of water."  (Id.)  He maintains that he did not receive medical attention even after he complained of "extreme pain in [his] rib area."  (Id.)  Plaintiff was subsequently taken to the Mount Carmel Police Station.  (Id. ¶ 12.)  After an hour and a half, Defendant Hollenbush transported Plaintiff to the Snyder County Prison.  (Id.)  Forty-five (45) minutes later, Plaintiff

was transported to the Columbia County Prison, where he "was booked in for the night with still no medical attention given." (Id. ¶ 13.)

On June 16, 2017, Plaintiff was transported from the Columbia County Prison to the Northumberland County Jail. (Id. ¶ 14.) Upon his arrival, Plaintiff alleges that he informed "all of [the] Northumberland [County] correction staff" about pain in his rib cage but received no help. (Id. ¶ 15.) Plaintiff received a routine evaluation and a mental health screening and was placed on a 72-hour quarantine for "new commits." (Id. ¶¶ 15-16.)

On June 17, 2017, Plaintiff "awoke to find that his right thigh was swollen to the point that it was hard for [him] to walk." (Id. ¶ 17.) Plaintiff "notified numerous Northumberland [County] prison staff regarding his need for medical assistance." (Id.) He was told to submit a sick call slip, which he did. (Id.) Plaintiff eventually spoke to Defendants Davis and Kulenguskey "on several occasions" regarding his "leg being swollen and growing larger by the day, thus making it nearly impossible for [him] to walk." (Id. ¶ 18.) Plaintiff avers that on June 19, 2017, he asked Defendant Kovach, the Warden of the Northumberland County Jail, for help. (Id. ¶ 19.) Plaintiff "was informed that it was out of Warden Kovach's hands—and that it was up to the medical staff of SCI Coal Township." (Id.)[1]

Plaintiff maintains that from his very first encounter with Defendants Davis and Kulenguskey, he "was prescribed numerous medications for inflam[m]ation and the steroid [prednisone], and told to drink water and that there wasn't anything wrong." (Id. ¶ 20.) He received "several medications . . . without any concrete diagnosis." (Id. ¶ 21.) According to Plaintiff, Defendants Davis and Kulenguskey also "began suggesting to other medical staff and

---

[1] Plaintiff's complaint indicates that the Northumberland County Jail is "operating on J & K block of SCI Coal Township." (Doc. No. 2 ¶ 14.)

3

county corrections staff that Plaintiff was indeed faking." (<u>Id.</u> ¶ 22.)  Plaintiff alleges that he also notified Defendants Greek, Shuman, and Kovach of his "extreme pain" but that they did not "render assistance." (<u>Id.</u> ¶¶ 22-23.)

On June 21, 2017, Defendant Shuman escorted Plaintiff to a court appearance.  (<u>Id.</u> ¶ 24.) Plaintiff alleges that he could "barely stand, let alone walk" when Defendant Shuman came to escort him to the transit.  (<u>Id.</u>)  Defendant Shuman "insisted that [Plaintiff] stand up [and] walk despite [his] pain." (<u>Id.</u>)  Plaintiff avers that Defendant Shuman "kept calling [him] 'boy,'" which Plaintiff refers to as a "derogatory term used by slave owners." (<u>Id.</u>)  He maintains that Defendant Shuman "kept saying [Plaintiff] was faking [his] obvious need for medical help." (<u>Id.</u>)  Plaintiff alleges that upon his return, Defendant Shuman "grabbed [him] by the arm [and] proceeded to drag [him] because he wanted to get [him] back in time for count." (<u>Id.</u> ¶ 25.) Plaintiff "fell to his knees while [Defendant] Shuman began yelling, 'Get your sorry ass up boy!'" (<u>Id.</u>)

On June 24, 2017, Plaintiff "could not take the pain any longer." (<u>Id.</u> ¶ 26.)  He spoke to Defendant Greek, who told Plaintiff that "the issue was out of his hands." (<u>Id.</u>)  Plaintiff asked for a grievance.  (<u>Id.</u>)  An hour later, "Nurse Karen" came to see Plaintiff, examined his leg, and referred him to see the doctor the following morning.  (<u>Id.</u> ¶ 27.)  Plaintiff was seen by Dr. Morlock on June 25, 2017.  (<u>Id.</u> ¶ 28.)  Dr. Morlock examined Plaintiff's leg and "immediately suggested to other medical staff to call 911." (<u>Id.</u>)  Plaintiff was subsequently transported to Geisinger Medical, where he learned that he did not have any blood flow in his right leg.  (<u>Id.</u> ¶¶ 28-29.)  Plaintiff spent a month and a half in the hospital to undergo "repeated surgeries." (<u>Id.</u> ¶ 29.)  Ultimately, Plaintiff was diagnosed with deep vein thrombosis.  (<u>Id.</u>)  Based on these allegations, Plaintiff asserts violations of his due process rights under the Fourteenth

Amendment, as well as his rights under the Eighth Amendment.  (Id. ¶¶ 41-42.)  Plaintiff

requests injunctive relief, as well as compensatory and punitive damages.  (Id. ¶¶ 43-45.)

## II.    LEGAL STANDARD

### A.    Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed

to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion."

Revell v. Port Auth., 598 F.3d 128, 134 (3d Cir. 2010.)  When ruling on a motion to dismiss

under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all

reasonable inferences that can be drawn from them, viewed in the light most favorable to the

plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig.,

618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out

"sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at

678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard

requires more than a mere possibility that the defendant is liable for the alleged misconduct:

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the

following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the

elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations

contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine

whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to

an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)

(internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on

a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the

complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents."  See Mayer v.

Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document

filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A

pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than

formal pleadings drafted by lawyers" and may be dismissed for failure to state a claim only if it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that

would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.      Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of

federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute

states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to

vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon,

331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85

(2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the

conduct complained of was committed by persons acting under color of state law; and (2) the

conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United

States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West

v. Atkins, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

### A.    Plaintiff's Complaint

As noted above, Plaintiff alleges that Defendants Ashton, Greek, Kovach, and Shuman

violated his due process rights under the Fourteenth and Eighth Amendments by not providing

adequate medical care for his leg and rib pain.  Plaintiff's complaint, however, does not clarify

whether he was a pretrial detainee or a convicted prisoner during the relevant time period.

Pretrial detainees' claims of inadequate medical care arise under the Fourteenth Amendment,

rather than the Eighth Amendment.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581

(3d Cir. 2003).  The Supreme Court, however, has held that the Fourteenth Amendment affords

pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners

under the Eighth Amendment.  See id. (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S.

239, 244 (1983)).  In the context of claims for inadequate medical care, the Third Circuit has

"found no reason to apply a different standard than that set forth in Estelle[v.Gamble, 429 U.S.

97 (1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth

Amendment) when evaluating whether a claim for inadequate medical care by a pretrial detainee

is sufficient under the Fourteenth Amendment."  See id.  Accordingly, the Court will analyze

Plaintiff's claim under the framework of the Eighth Amendment.[2]  See id. at 582.

---

[2] To the extent that Plaintiff asserts a substantive due process claim based upon Defendants
Ashton, Greek, Kovach, and Shuman's actions, he cannot do so.  In adopting the "more-specific-
provision-rule" established in County of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998), the

To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale, 318 F.3d at 582.  The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs. See Farmer v.  Brennan, 511 U.S. 825, 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  See Farmer, 511 U.S. at 837.  Circumstantial evidence may establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  See Spruill, 372 F.3d at 236.  Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors

---

Third Circuit has noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'"  See Betts v. New Castle Dev. Ctr., 621 F.3d 249, 260-61 (3d Cir. 2010).  Here, Plaintiff's alleged due process violations fit squarely within his Eighth Amendment claims, foreclosing any substantive due process claims he may seek to raise.

or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  See id.

In the instant case, the Court agrees that Plaintiff's complaint, as pled, fails to state a plausible Eighth Amendment claim against Defendants Ashton, Greek, Kovach, and Shuman. With respect to Defendant Ashton, Plaintiff names him in the caption, but there are no averments related to him in the body of the complaint.  Plaintiff's complaint is subject to dismissal with respect to Defendant Ashton for that reason alone.  See Robinson v. Wheary, No. 1:16-cv-2222, 2017 WL 2152365, at *1-2 (M.D. Pa. May 17, 2017) (dismissing complaint where "the caption of the complaint name[d] numerous individual defendants, [but] contain[ed] no well-pleaded factual averments relating to these specific defendants in the body of the complaint").  In any event, it is clear from Plaintiff's complaint that he was under the care of medical personnel while at the Northumberland County Jail.  He does not allege that Defendants Ashton, Greek, Kovach, and Shuman are medical professionals or that they participated in, directed, or interfered with Plaintiff's receipt of medical treatment.  In sum, Plaintiff fails to allege any facts that plausibly suggest that Defendants Ashton, Greek, Kovach, and Shuman had either reason to believe or actual knowledge that medical personnel were mistreating him or failing to treat his rib and leg pain.  See Spruill, 372 F.3d at 236; see also Parkell v. Danberg, 833 F.3d 313, 336 (3d Cir. 2016).  Accordingly, the Court will grant Defendants' motion for judgment on the pleadings because Plaintiff fails to state an Eighth Amendment claim regarding medical care against Defendants Ashton, Greek, Kovach, and Shuman.

As noted supra, Plaintiff alleges further that Defendant Shuman verbally harassed him by repeatedly calling him "boy" and telling him to "get his sorry ass up," and that Defendant

Shuman grabbed him by the arm and dragged him.  (Id. ¶¶ 24-25, 36.)  The Court construes

Plaintiff's complaint to be raising claims for verbal harassment and excessive force under the

Eighth and Fourteenth Amendments.  Defendants Ashton, Greek, Kovach, and Shuman have not

addressed such claims in their motion for judgment on the pleadings.  However, "even severe

verbal harassment typically does not rise to the level of a constitutional violation."  See Fanti v.

Weinstock, 629 F. App'x 325, 330 (3d Cir. 2015); see also Burkholder v. Newton, 116 F. App'x

358, 360 (3d Cir. 2004) (noting that "it is well established that allegations of threats or verbal

harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983").

Accordingly, Plaintiff cannot maintain any verbal harassment claims against Defendant Shuman.

Nevertheless, the Court concludes, for the reasons set forth below, that Plaintiff has set forth a

plausible claim for excessive force at this time.

       The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from

the use of excessive force that amounts to punishment," see Kingsley v. Hendrickson, 135 S. Ct.

2466, 2473 (2015) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)), whereas the

Eighth Amendment's protection against cruel and unusual punishment is the "primary source of

substantive protection in cases where a[] [convicted] inmate challenges a prison official's use of

force as excessive and unjustified."  See Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000).  To

demonstrate a due process violation, a detainee must allege that "the force purposely or

knowingly used against him was objectively unreasonable," meaning that "the actions [were]

'not rationally related to a legitimate nonpunitive governmental purpose.'"  See Kingsley, 135 S.

Ct. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979)).  Courts consider the following

factors to determine whether an officer used "objectively unreasonable" force:

> (1) the relationship between the need for the use of force and the amount of force
> used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to

> temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.

Robinson v. Danberg, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting Kingsley, 135 S. Ct. at 2473). The standard governing the Court's inquiry as to whether a plaintiff has a viable Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In making this determination, courts are tasked with evaluating the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 321).

In his complaint, Plaintiff alleges that on June 21, 2017, after returning to the Northumberland County Jail from a court appearance, Defendant Shuman "grabbed [him] by the arm [and] proceeded to drag [him] because he wanted to get [him] back in time for count." (Doc. No. 2 ¶ 25.) Plaintiff "fell to his knees." (Id.) He alleges that he "underwent extreme pain on top of the already existing pain when [Defendant] Shuman dragged Plaintiff on the ground." (Id. ¶ 36.) At this stage, the Court concludes that Plaintiff has set forth a plausible excessive force claim against Defendant Shuman under both standards set forth above. Accordingly, Plaintiff may proceed on his excessive force claim against Defendant Shuman.

**B.      Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before the Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). Here, with respect to Plaintiff's Eighth Amendment claim against Defendants Ashton, Greek, Kovach, and Shuman concerning medical care, it is neither clear that amendment would be futile, nor is there any basis to believe it would be inequitable. Accordingly, Plaintiff will be granted one more opportunity to file an amended complaint.[3]

---

[3] As noted above, in its September 13, 2019 Memorandum and Order, the Court granted Defendant Kulenguskey's motion to dismiss and granted Plaintiff leave to file an amended complaint with respect to his Eighth Amendment claims against her. (Doc. Nos. 42, 43.) In its January 30, 2020 Memorandum and Order, the Court granted Defendant Hollenbush's motion to dismiss and granted Plaintiff leave to file an amended complaint with respect to his Fourth and Fourteenth Amendment claims against him, as well as his claims against Defendant Kulenguskey. (Doc. Nos. 62, 63.) Plaintiff, however, did not file an amended complaint. Because the Court is granting Plaintiff leave to file an amended complaint with respect to his claims against Defendants Ashton, Greek, Kovach, and Shuman, Plaintiff may use this opportunity to amend his claims against Defendants Kulenguskey and Hollenbush, as well.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant Defendants Ashton, Greek, Kovach, and Shuman's motion for judgment on the pleadings (Doc. No. 64) with respect to Plaintiff's Eighth Amendment claim concerning medical care, as well as any verbal harassment claims Plaintiff asserts against Defendant Shuman.  Plaintiff's excessive force claim against Defendant Shuman will proceed at this time.  The Court will grant Plaintiff leave to file an amended complaint with respect to his Eighth Amendment medical care claims against Defendants Ashton, Greek, Kovach, Shuman, and Kulenguskey, as well as his Fourth and Fourteenth Amendment claims against Defendant Hollenbush.  An appropriate Order follows.